Ryan Lee, Esq. (SBN 024846)
Krohn & Moss, Ltd.
10474 Santa Monica Blvd. Suite 401
Los Angeles, CA  90025
Telephone: (323) 988-2400
rlee@consumerlawcenter.com
Attorney for Plaintiff,
DENNIS WEIBLE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DENNIS WEIBLE,<br><br>                    Plaintiff,<br><br>v.<br><br>JEROLD KAPLAN LAW OFFICE,<br><br>                    Defendant. | No.  2:09-cv-01981-MHB<br><br>**PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO PLAINTIFF'S ACCEPTANCE OF THE OFFER OF JUDGMENT** |

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   BACKGROUND**

On or about September 22, 2009, Plaintiff, by and through his attorneys Krohn & Moss, Ltd. ("K&M"), brought suit pursuant to provisions of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. 1692, *et seq*.  Plaintiff prayed for relief and for actual and statutory damages and all reasonable attorney's fees and costs incurred for Defendant's violation of the FDCPA.

On or about November 4, 2009, Defendant issued its Offer of Judgment pursuant to Federal Rule of Civil Procedure 68, in the amount of $1,001.00 to satisfy Plaintiff's underlying claims, plus a specific reservation of the issue of Plaintiff's costs and attorneys' fees for a later determination by the Court. (See Defendant's Offer of Judgment, attached hereto as Exhibit "A"). Plaintiff filed his Notice of Acceptance of Rule 68 Offer of Judgment on November 10, 2009. (See Notice attached hereto as Exhibit "B").

## II. PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEYS' FEES PURSUANT TO THE FDCPA.

The specific statutory language of the FDCPA, and the public policy considerations in support of this Act, entitle Plaintiff the recovery of attorney's fees and costs in this matter. 15 U.S.C. §1692k(a) states:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

Pursuant to this specific language, the federal courts have long recognized the importance of the fee shifting provision of the FDCPA, as well as the public policies behind it. In *Tolentino v. Friedman,* (7th Cir. 1995) the court affirmed that a separate award for costs and fees is mandatory.

> Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. *Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir.1995).

Plaintiff's entitlement to reasonable costs and fees has been reaffirmed by the Ninth Circuit Court of Appeals as recently as April 2008 where court once again ordered that the determination of costs and fees is mandatory by the district courts. "The FDCPA's statutory language makes an award of fees mandatory. The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *see also Graziano v. Harrison*, 950 F.2d 107 (3d Cir.1991) (noting that the FDCPA mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general).

The *Tolentino* court also noted Congress' specific intent to allow an individual plaintiff the ability to pursue an action where the burden of costs and fees would otherwise economically preclude this type of rights enforcement. *Tolentino* at 652 *citing City of Riverside v. Rivera*, 477 U.S. 561 (1986)). "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms and

congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Id.* The court held similarly in *Camacho* when it rejected the district court's "flat fee" approach, and in its remand for further findings directed that "[T]he amount of [attorney's fees] must be determined on the facts of each case." *Camacho* at 978.[1]

Thus, the FDCPA mandates that the recovery of Plaintiff's attorneys' fees and costs is integral to the success of the policy goals of the FDCPA. By virtue of the acceptance of the offer of judgment against Defendant, Plaintiff has prevailed in this matter and should be awarded reasonable attorneys' fees and costs as determined by this Court.

## III. PLAINTIFF IS ENTITLED TO HIS COSTS AND ATTORNEYS' FEES AS HIS ACCEPTANCE OF DEFENDANT'S OFFER OF JUDGMENT RENDERS HIM THE PREVAILING PARTY IN THIS ACTION.

"[I]n order to encourage private enforcement of the law . . . Congress legislated that in certain cases prevailing parties shall recover their attorney's fees from the opposing side. When a statute provides for such fees, it is termed a 'fee shifting' statute. The FDCPA is one such statute, providing that any debt collector who fails to comply with its provisions is liable in the case of any successful action

---

[1] "The [District] court concluded that "[w]here ... the attorneys seeking fees support their motion with materials that are substantially unchanged from those filed by them in numerous other cases ... it would be inappropriate to award fees on fees on an hourly basis," and instead, the court awarded a "flat award" of $500." *Camacho* at 976. However, the Ninth Circuit Court of Appeals rejected this approach and remanded for a case-by-case determination of attorney's fees.

PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE ENTRY OF JUDGMENT FOR PLAINTIFF

... [for] the costs of the action, together with a reasonable attorney's fee as determined by the court." *Camacho* at 978 *citing Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir.2003) and 15 U.S.C. § 1692k(a)(3)).

In support of this Congressional mandate, federal appellate courts have long upheld a plaintiff's recovery of attorney's fees and costs after the entry of judgment in plaintiff's favor, such as in the case where he accepts an offer of judgment.  *See*, e.g., *Webb v. James*, 147 F.3d 617 (7th Cir. 1998) (awarding attorney fees under the underlying statute after plaintiff accepted defendant's federal Rule 68 offer of judgment) and *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830 (9th Cir. 1997) (same).[2]  For example, the United States Ninth Circuit Court of Appeals has expressly held that an enforceable private settlement agreement requiring the defendant to pay money to the plaintiff, where the district court retains jurisdiction to determine fees, entitles the plaintiff to statutory fees and costs as the prevailing party. *See Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002).

In *Barrios*, the plaintiff sued the defendant under the ADA seeking a broad range of monetary and injunctive relief. *Barrios* at 1136. During the course of

---

[2] Although Defendant's Offer of Judgment expressly provides this Court with authority to award attorney's fees and costs, had Defendant's Offer of Judgment been silent as to the same, Plaintiff still would have been entitled to the recovery of fees and costs pursuant to Rule 68. *See Utility Automation 2000, Inc. v. Choctawhatchee Electric Cooperative, Inc.*, 298 F.3d 1238, 1249 (11th Cir. 2002) (holding that the plaintiff was entitled to attorney fees as the prevailing party notwithstanding the offer's silence as to fees).

litigation the parties entered into a private settlement agreement. *Id.* at 1133. The agreement in *Barrios* required the defendant to pay the plaintiff a relatively small sum of money without conceding liability and allowed *either* side to petition for attorney fees and costs as the prevailing party. *Id.* There, as here, the plaintiff filed a motion for attorney's fees and costs shortly after entering into the agreement. *Id.* The court found the plaintiff entitled to the recovery of attorney's fees and explained that "Given that Barrios can enforce the terms of the settlement agreement against the [defendant], the district court correctly concluded that Barrios was the 'prevailing party' in his civil rights litigation." *Id*. at 1134.

The United States Supreme Court has defined plaintiff as the "prevailing party" for purposes of the award of attorney's fees "if [the plaintiff] succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *see also Busche v. Burkee,* 649 F. 2d 509 (7th Cir. 1981), *cert. denied,* 454 U.S. 897 (1981) ("[The] proper focus is whether the plaintiff has been successful on the central issue as exhibited  by the fact that he has acquired the primary relief sought."). Where sought, monetary relief constitutes at least "some of the benefit the parties sought in bringing the suit." *Id*. at 432 *citing Nadeau v. Helgemoe,* 581 F. 2d 275 (1st Cir. 1978); *see also Farrar v. Hobby,* 506 U.S. 103 (1992) (holding that even

nominal damages suffice under the test that a party prevail on the merits of at least some of its claims).

In *Buckhannon Board and Care Home v. West Virginia Department of Health and Human Resources, et al.*, 532 U.S. 598 (2001) the Court held that "enforceable judgments on the merits and court ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's [sic] fees). Where the legal relationship is materially altered as a result of a judicially enforceable settlement agreement, the plaintiff is entitled to prevailing party status, and an award of attorney's fees is a natural consequence. *See Buckhannon Board and Care Home,* 532 U.S. at 604. In this case, Plaintiff are the prevailing party and are entitled to attorneys' fees as the district court is statutorily and contractually authorized to retain jurisdiction over the matter at hand.

Plaintiff obtained considerable recovery on his claims by receiving $1,001.00 in damages plus payment of attorneys' fees and costs. Available to Plaintiff for Defendant's violations of the FDCPA are actual damages plus "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1592(a)(2)(A). When compared to the damages available under to the Fair Debt Collection Practices Act, Plaintiff was very successful in advancing this case by receiving $1,001.00 plus costs and fees.

PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE ENTRY OF JUDGMENT FOR PLAINTIFF

Plaintiff can, therefore, also be defined as the prevailing party by virtue of their success on a central issue of litigation as exhibited by the fact that they acquired the primary relief sought, *i.e.*, monetary damages. *See Hensley*, 461 U.S. at 433. For the reason that where sought, monetary relief constitutes at least "some of the benefit the parties sought in bringing the suit," Plaintiff are afforded "prevailing party" status for purposes of the award of attorneys' fees. Although, even per *Farrar* that nominal damages may suffice for a plaintiff to be considering a prevailing party for the award of attorney's fees, Plaintiff obtained far greater value than that which may be deemed nominal as Plaintiff received $1,001.00 ***in addition to attorney's fees and costs*** to be determined by this Court.

By virtue of Plaintiff substantial recovery on his claims, Plaintiff has prevailed in this matter and should be awarded reasonable attorney's fees and costs as determined by this Court.

**IV. PUBLIC POLICY SUPPORTS AN AWARD OF COSTS AND ATTORNEYS' FEES.**

"The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. Congress found such abuses by debt collectors to be serious and widespread." *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 653 (S.D.N.Y. 2006) *citing* 15 U.S.C.

§ 1692(e) and *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).[3] The fee-shifting provision contained in the FDCPA, therefore, enables consumers to vindicate their personal rights and while benefitting society in general, resulting in greater deterrence of fraudulent and deceptive business practices.

Further, the difficulty in private attorneys general actions, such as the FDCPA and similar state enacted statutes, is that the potential for recovery is not clear at the time the litigation is commenced unlike in personal injury actions. *Bowers v. Transamerica Title Insurance Company*, 675 P.2d 193, 204 (Wash. 1983). Additionally, the amount in controversy is usually too small to induce an attorney to commence litigation on a percentage contingency. Accordingly, "[T]he purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc.*, 287 Ill.App.3d 719, 680 N.E.2d 416 (Ill. Ct. App. 1997); *See also Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 488 (Ky. Ct. App. 1978). By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

---

[3] Pursuant to the express intent of Congress in enacting the FDCPA, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Without a sufficient award of attorneys' fees and costs, an entry of judgment for the consumer would simply not make the consumer whole as the average consumer would simply be unable to pay his attorney's fees. This result would create a deterrent for the private bar to pursue an action for which Congress has so emphatically dictated the importance. This sort of "chilling effect" would counter the purpose of the statute, which, when coupled with the provision awarding attorney's fees, "is to encourage consumers to file actions to vindicate their rights." *Grove v. Huffman*, 262 Ill. App.3d 531, 539, 634 N.E. 2d 1184, 1190 (Ill. Ct. App. 1994). The attorney fee provision is in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs. *Id.* at 539. As a result, public policy dictates that attorneys' fees should be paid by the Defendant.

## V. THE RATES SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE AND COMMENSURATE WITH THEIR EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION.

Plaintiff seeks an award of attorneys' fees and costs in the amount of $2,451.50 that is comprised of 8.9 hours of attorney and paralegal time at hourly rates ranging from $125.00 per hour to $394.00 per hour. (See Statement of Services attached hereto and marked as Exhibit "C"). Specifically, Plaintiff seeks to recover attorney's fees for Ryan Lee at a rate of $290.00 per hour for 4.6 hours,

and fees for Adam Hill at a rate of $225.00 per hour for 2.3 hours[4]. The hourly rates of Plaintiff's attorneys delineated in Plaintiff's Statement of Services are commensurate with the experience and training of each employee at Krohn & Moss, Ltd. These rates are also supported by the 2007 Consumer Law Attorney Fee Survey, the 2007 National Law Journal Survey, the United States Attorney's Office and the "Laffey Matrix," as well as the affidavits of other consumer advocates.

**A.   The experience of the attorneys at K&M provide support for the hourly rates requested.**

The experience of the attorneys that worked on behalf of Plaintiff is detailed in the biography statement of Plaintiff's attorneys attached hereto as Group Exhibit "D" and further supported by the affidavits of Krohn & Moss, Ltd. attorneys contained within Group Exhibit "E."

**B.   The rates sought by K&M are reasonable as evidenced by the 2007 Consumer Law Attorney Fee Survey.**

In the fall 2007, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection by an "attorney's years in practice, location of practice, and size of firm." (See 2007 Consumer Law Attorney Fee Survey attached hereto as Exhibit "F"). The attached survey supports the billing rates requested as the

---

[4] Adam Hill participated in this case as a consulting attorney working in collaboration with Ryan Lee.

PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE ENTRY OF JUDGMENT FOR PLAINTIFF

average billing rate data in the survey, grouped by both region and years in practice, is consistent with those rates. For example, on page seven is shown the average billing rate for firms with fewer than 5 attorneys in Arizona where the average regional billing rate is $287 per hour. This is comparable to the rates requested for Ryan Lee and Adam Hill at only $290/hr and $225/hr respectively. Further, data collected for the Arizona region arranged by years in practice without regard to firm size shows the average rate for attorneys with 11-15 years in practice to be $325/hr, attorneys practicing between 3-5 years to be $242/hr, and attorneys practicing between 1-3 years to be $175/hr. As such, the rates requested by Plaintiff's attorneys are commensurate with other consumer attorneys' billing rates, indexed by both region and years in practice, and therefore, should be determined by this Court to be reasonable.

  **C.**  **The Rates Sought by K&M are lower than the Mean Billing Rates Compiled in *The National Law Journal's* 2007 Billing Survey for Associates and Partners in Law Firms Throughout the Country Including Arizona.**

*The National Law Journal's* 2007 Billing Survey also demonstrates the reasonableness of the rates as sought by Plaintiff attorney. For twenty-five (25) years, *The National Law Journal* has been providing the legal community with news, commentary and analysis on lawyers and the law. See *The National Law Journal's Website* at http://www.law.com/jsp/nlj/utility/about.jsp. *The National Law Journal* provides timely legal information of national importance to attorneys

concerning federal circuit court decisions, verdicts, practitioners' information, legislative issues, and legal news for business and private sectors. *Id.* The *National Law Journal's* 2007 survey of billing rates of the largest U.S. law firms provides the High, Average and Low rates for partners and associates at over 100 firms.

As evidenced by taking an average of the law firms surveyed by *The National Law Journal*, the rates charged by Krohn & Moss, Ltd. are commensurate, if not lower, then average rates charged by other firms in Arizona:

- Average Partner Billing Rate Low: $275/hr
- Average Partner Billing Rate High: $675/hr
- Average Associate Billing Rate Low: $170/hr
- Average Associate Billing Rate High: $390/hr

These rates reflect the growing increase in rates as charged by law firms in the Arizona area. (See Article from National Law Journal attached hereto as Exhibit "G"). Commenting on the Survey, Leigh Jones of *The National Law Journal* wrote in her December 11, 2007 article for the *Journal*, **"billing rates shot up in 2007, with approximately three-quarters of the law firms that participated in *The National Law Journal's* annual survey boosting the amounts they charged for partner and associate services."**

PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE ENTRY OF JUDGMENT FOR PLAINTIFF

**D.   The rates sought by K&M are reasonable as evidenced by the United States Attorney's Office and the "Laffey Matrix."**

The attorney's fees rates requested by Plaintiff as detailed in Plaintiff's Statement of Services are commensurate with the prevailing rates for attorneys that practice federal law. As the case at bar was filed pursuant to a federal remedial statute, the FDCPA, rates charged by other attorneys practicing federal law may be compared to determine an appropriate rate. *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983). In *Laffey*, the court compared rates of attorneys practicing federal claims with fee-shifting provisions to reach a hybrid rate. *Id*. The court's analysis in *Laffey* was taken one step further by the Civil Division for the United States Attorney's Office to reflect how rates have changed over the years due to inflation. In doing so, the United States Attorney's office created the "Laffey Matrix." As demonstrated by the "Laffey Matrix" the rates sought by Plaintiff's attorneys herein are commensurate with recognized rates for attorneys' with similar experience. The "Laffey Matrix" when coupled with the affidavits presented by Plaintiff and detailed biographies of the attorneys at Krohn & Moss, Ltd. provides conclusive evidence that the rates sought by Plaintiff's attorneys are reasonable.[5] The "Laffey Matrix" is incorporated into this Fee Petition in its entirety:

---

[5] This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The

### Civil Division - LAFFEY MATRIX 2004-2009

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 |
|---|---|---|---|---|---|
| 20+ years | 390 | 405 | 425 | 440 | 465 |
| 11-19 years | 345 | 360 | 375 | 390 | 410 |
| 8-10 years | 280 | 290 | 305 | 315 | 330 |
| 4-7 years | 225 | 235 | 245 | 255 | 270 |
| 1-3 years | 185 | 195 | 205 | 215 | 225 |
| Paralegals & Law Clerks | 110 | 115 | 120 | 125 | 130 |

The Laffey Matrix clearly illustrates that the rates charged by Krohn & Moss, Ltd. are commensurate with the rates that could have been charged according to United States Attorney's Office.  Based on the "Laffey Matrix" and

---

matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.*, 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does *not* apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983).

PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO THE ENTRY OF JUDGMENT FOR PLAINTIFF

the other authority provided to this Court in Plaintiff's Petition for Attorney's fees, the hourly rates

## VI. IT IS DEFENDANT'S BURDEN TO ESTABLISH ANY REDUCTION IN ATTORNEYS' FEES.

It has generally been recognized in fee-shifting statutes that "a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990) (awarding $5,500,000 in fees on $3 recovery) cited in *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992).[6] *See Laura B. Bartell, Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 560-62 (1984). The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *See*, e.g, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); and *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant"). Accordingly, unless Defendant is able to meet its burden, this Court should accept Plaintiff's lodestar and award the attorney's fees and costs sought.

---

[6] The lodestar figure represents reasonable hours times reasonable rate. *Blanchard v. Bergeron*, 103 L.Ed. 2d 67, 76 (1989) *quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 656 (1986).

## VII. PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.

Plaintiff seeks $350.00 in litigation costs incurred by Plaintiff. This amount includes the cost of filing the Complaint.

## VIII. CONCLUSION.

Plaintiff was represented free of charge by Krohn & Moss, Ltd., a consumer protection law firm that has represented thousands of consumers to date. Pursuant to the public policy considerations behind the fee-shifting provision of the FDCPA as detailed above, Plaintiff requests that this Honorable Court award Plaintiff attorneys' fees and costs in the amount of $2,451.50.

                            Respectfully Submitted,

DATED: December 2, 2009        KROHN & MOSS, LTD.

                            By:/s/ Ryan Lee

                              Ryan Lee
                              Attorney for Plaintiff